**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIM. NO.  10-663-06** |
| | **:** | |
| | **:** | |
| **MARK MILLER** | **:** | |
| **a/k/a "Sharkey"** | **:** | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MARK MILLER'S MOTION FOR WRIT OF ERROR CORAM NOBIS OR AUDITA QUERELA FOR RELIEF FROM FORFEITURE ORDER**

Nearly a decade after being sentenced, defendant Mark Miller seeks to vacate a long-final forfeiture order based on the Supreme Court's 2017 decision in *Honeycutt v. United States,* 137 S. Ct. 1636 (2017). He seeks relief under the rarely used and extraordinary remedies of *coram nobis* "or" *audita querela*.[1] Federal law does not permit him to do so. *Coram nobis*

---

[1] Miller's motion for writ of error does not precisely delineate between the two writs of *coram nobis* and *audita querela.* It is unclear whether he seeks relief under both or has collapsed the two writs into a single theory under the All Writs Act (28 U.S.C. § 1651). *See, e.g.,* Mot. at Introductory Paragraph (Miller "moves for relief under 28 U.S.C. 1651 via a writ of error *coram nobis* or *audita querela*); ¶ 18 ("the proper label of [the writ] is not important"); ¶ 18(c) ("Relief under 1651 in the nature of an extraordinary writ of *coram nobis* or *audita querela* is properly invoked . . .
*continued . . .*

relief is untimely as well as procedurally barred. *Audita querela* relief is factually and legally unavailable. Moreover, even if some form of extraordinary collateral relief were appropriate, nothing in Miller's forfeiture order is incorrect under *Honeycutt*, because the evidence shows that the extent of his forfeiture liability would exceed the $5,000,000 forfeiture money judgment that the Court imposed and Miller now challenges, given his substantial role in the Frankford Drug Trafficking Organization and the money he realized from his offenses (either by himself or in partnership with codefendant Jaquel Crews). Nothing in *Honeycutt* shields Miller from being held accountable for proceeds and/or facilitating property that he gained or used by pooling efforts and resources with Jaquel Crews or other codefendants. Accordingly, *coram nobis* and *audita querela* relief are inapplicable and inapposite.

## I. Procedural History

On March 14, 2012, Mark Miller and his co-defendant Jaquel Crews were convicted by a jury of one count of conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base ("crack") between 1986 and November 17, 2007, in violation of 21 U.S.C.

---

by motion"). Although it is unclear whether Miller is proceeding under either or both writs, the government responds under both theories.

2

§ 846 (Count Five of the Second Superseding Indictment). (ECF 79). Miller

was also convicted of seven counts of money laundering, in violation of 18

U.S.C. § 1956 (Counts 21 through 27). On August 14, 2012, as a result of his

conviction on Count Five, this Court ordered Miller, pursuant to 21 U.S.C.

§ 853, to forfeit his interest in $5,000,000, which this Court determined

was the amount of property that was used to commit, or to facilitate the

commission of, the conspiracy charged in Count Five and was property

constituting, or derived from, proceeds obtained directly or indirectly from

the commission of the offense. Miller was held jointly and severally liable

for the forfeiture money judgment with his co-defendant Jaquel Crews.[2] On

---

[2] On January 23, 2018, this Court granted Crews' request for a writ of *audita querela* and vacated the August 14, 2012, order and forfeiture money judgment against Crews, based on the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1636 (2017). Following briefing and an evidentiary hearing, however, this Court reimposed against Crews a forfeiture money judgment in the same amount of $5,000,000, finding again (based on the original trial evidence) that Crews had received or obtained $5,000,000 through his drug trafficking activities. (ECF 658, 659).

In its January 2018 order (ECF 607), this Court determined that "the writ of audit querela is available to Defendant in these circumstances, since Defendant preserved this issue by raising it on appeal and there has been an intervening change in the applicable law since his appeal was denied." As will be discussed, the fact that Crews preserved the issue on appeal distinguishes his case from that of Miller, who did not challenge the joint-and-several nature of his forfeiture order on direct appeal. Further, more broadly, the government continues to respectfully disagree with this Court's application of *audita querela*, and therefore briefs the issue again here. Notably, after this Court's ruling with regard to Crews, a panel of the Third

*continued* . . .

July 23, 2013, this Court sentenced Miller to 212 months of imprisonment and five years of supervised release as to Count Five, 212 months of imprisonment and three years of supervised release as to each of Counts 21 through 27, to be served concurrently, a special assessment of $800.00, and the forfeiture of $5,000,000 pursuant to the August 14, 2012, forfeiture order.[3] Miller appealed his conviction and sentence. His appeal was denied on April 1, 2016. *See United States v. Miller*, 645 F. App'x 211 (3d Cir.), *cert. denied*, 137 S. Ct. 323 (2016).

Miller subsequently filed a motion pursuant to 28 U.S.C. § 2255. After protracted briefing, this Court issued its ruling on August 8, 2022. In relevant part here, this Court held that the section 2255 motion did not provide Miller a vehicle through which to challenge the $5,000,000 forfeiture order; however, Miller was granted leave to seek further relief pursuant to a petition for a writ of *audita querela*. Miller subsequently filed

---

Circuit agreed with the view of another judge of this Court, and with the government, that "*audita querela* is not an available remedy to vacate [the defendant's] final forfeiture and substitute asset orders" based on a *Honeycutt* challenge. *United States v. Georgiou*, 800 F. App'x 136, 138-39 (3d Cir. 2020) (not precedential).

[3] Miller's sentence was subsequently reduced to a term of imprisonment of 188 months, effective November 1, 2015, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. (ECF 575).

a motion ostensibly seeking relief under the writs of *coram nobis* and *audita querela*. (ECF 766).

## II. Facts Relevant to Forfeiture

Both this Court and the Third Circuit have determined that Miller bought or sold –either by himself or working in tandem with Jaquel Crews and other codefendants – hundreds of kilograms of cocaine and enjoyed a lifestyle commensurate with the money that such activities would generate. As the Third Circuit recognized in Miller's direct appeal, testimony in this matter "revealed that Miller had been selling cocaine at least since 1986 . . . [.] Together, [Miller and his codefendant Jaquel Crews] laundered millions of dollars in drug proceeds through the purchase of real estate and other assets." *United States v. Miller*, 645 F. App'x 211, 213 (3d Cir. 2016). Moreover, neither Miller nor Crews "was gainfully employed," and "[b]oth Miller and Crews routinely delivered money to a California-based cocaine supplier . . . on numerous occasions." *Id.* Further, Miller did not challenge on appeal this Court's determination at sentencing that the total quantity of cocaine for which Miller was responsible (selling and/or purchasing) totaled 531.14 kilograms. *See* July 24, 2012 Sentencing Tr. 30:15-31:7.

## III.  ARGUMENT

Nearly a decade after being sentenced, defendant Mark Miller seeks to vacate a long-final forfeiture order based on the Supreme Court's 2017 decision in *Honeycutt v. United States,* 137 S. Ct. 1636 (2017). He seeks relief under the rarely used and extraordinary remedies of *coram nobis* "or" *audita querela.*[4] Both theories fail. First, Miller is in custody, thus *coram nobis* relief (assuming it is even theoretically available) does not lie. Second, conceding that he failed to challenge the joint-and-several nature of his forfeiture order on direct appeal, any relief under the writ of *coram nobis* is procedurally barred. Similarly, because any challenges to forfeiture could have – and, indeed, must have been – raised on direct appeal, relief under the writ of *audita querela* also fails.

Even if there were a procedural basis for Miller to obtain relief under *Honeycutt*, his claim must fail because he obtained millions of dollars in proceeds and/or used millions to facilitate cocaine purchases through his significant role in the Frankford Drug Trafficking Organization. *Honeycutt* simply does not apply to an individual such as Miller who had a significant role in the charged offenses and received and/or controlled millions of dollars along the way. Thus, there is no *Honeycutt* error, and Miller suffers

---

[4] *See, supra* note 1.

no prejudice from the continued existence of a forfeiture money judgment that accurately reflects the extent of his forfeiture liability.

## A. The *Honeycutt* Decision Does Not Support *Coram Nobis* or *Audita Querela* Relief.

Miller argues that "[p]ursuant to *Honeycutt*, the forfeiture in [his] case is unlawful" because *Honeycutt* "does not countenance joint and several liability." Mot. at ¶¶ 12, 17. Miller's motion fails for two reasons, however. First, there is no procedural basis to overturn his final order of forfeiture. Second, it fails substantively because it is based on a misreading of *Honeycutt*.

In *Honeycutt*, the Supreme Court held that, under 21 U.S.C. § 853(a)(1), forfeiture could not be awarded against the defendant on a theory of joint and several liability for proceeds that the defendant did not obtain. *Honeycutt*, 137 S. Ct. at 1630-31. Specifically, the Court reversed a Sixth Circuit decision that had held that the government was entitled to a forfeiture money judgment against a defendant (Terry Honeycutt) who had managed sales and inventory in a store owned by his brother and participated in sales of a chemical used to manufacture methamphetamine, but who did not personally receive any of the proceeds of the sales. Honeycutt had no "controlling interest in the store" and "did not stand to benefit personally" from the proceeds that his store-owning brother

7

obtained. *Id.* at 1631. The government had relied on the "background principle" of *Pinkerton* liability to argue that Honeycutt should be accountable for money that his brother received. *Id.* at 1634. The Court rejected the government's argument that all co-conspirators should be legally responsible for the foreseeable actions and proceeds of a common plan. *Id.* at 1634-35. Instead, the Supreme Court ultimately held that "[f]orfeiture . . . is limited to property the defendant himself actually acquired as the result of the crime." *Id.* at 1635. The Supreme Court further held that a defendant may not be "held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Id.* at 1630.

In reaching this conclusion, the Court highlighted Section 853(a)'s textual requirement that a defendant "obtain" the proceeds – which, the Court announced, evidenced the statute's focus on ownership, personal possession, or use. 137 S. Ct. at 1632, 1635. Thus, the Court concluded that 21 U.S.C. § 853(a)(1) authorizes forfeiture of only the property the defendant obtained as the result of the crime. Nothing in *Honeycutt*, however, bars the imposition of forfeiture liability for property that a defendant received or obtained, either based on his own offense conduct or

conduct that he performed in tandem or in partnership with another
defendant.

## B. There Is No Process Through Which *Honeycutt* Can Overturn Miller's Final Forfeiture Order; *Coram Nobis* and *Audita Querela* Do Not Create One.

Miller's motion assumes and implies, without argument or
explanation, that *Honeycutt* has retroactive application. While the Third
Circuit has denied *audita querela* petitions that sought to vacate forfeiture
money judgments that pre-dated *Honeycutt*, the Third Circuit has not
reached the issue of whether *Honeycutt* announced a new substantive rule
of criminal procedure. *See, e.g., United States v. Georgiou*, 800 F. App'x
136, 139 n.2 (3d Cir. 2020) (not precedential).  There is no need to consider
retroactivity, however. Miller has ignored the controlling issue: Whether
there is a vehicle through which *Honeycutt* – even if "retroactive" – applies
at all. There is none.

Miller procedurally relies upon and generally discusses the writs of
both *coram nobis* and *audita querela*, under the aegis of the All Writs Act,
28 U.S.C. § 1651. Mot. at 1.  The writs of error *coram nobis* and *audita
querela* are available to federal courts under the All Writs Act.  *See United
States v. Morgan*, 346 U.S. 502, 506 (1954). "The All Writs Act is a residual
source of authority to issue writs that are not otherwise covered by statute[,

9

but w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985).

The writ of *coram nobis* is generally used to attack allegedly invalid convictions when the petitioner is no longer "in custody" for purposes of 28 U.S.C. § 2255, but for which he is suffering continuing consequences. *See United States v. Stoneman*, 870 F.2d 102, 105-06 (3d Cir. 1989). In 1996, the Supreme Court reaffirmed its observation from almost half a century earlier that "'it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate.'" *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quoting *United States v. Smith*, 331 U.S. 469, 475 n.4 (1947)). Only errors of "the most fundamental kind" may warrant relief of the "extraordinary remedy" of a writ of *coram nobis*. *See Stoneman*, 870 F.2d at 105-06. "Earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise." *Id.* at 106.

The writ of *audita querela* is available in criminal cases to the extent that it fills in gaps in the current system of post-conviction relief. *See Massey v. United States*, 581 F. 3d 172, 174 (3d Cir. 2009). The "writ is available only where the petitioner raises a (1) valid legal objection; (2) to a

judgment that arises after that judgment is entered; and (3) that is not redressable by some other means." *Muirhead v. Attorney General*, 262 F. App'x 473, 474 (3d Cir. 2008) (not precedential). "Because *audita querela* is an extraordinary remedy, it is appropriate only in compelling circumstances." *United States v. Tonabanua*, 706 F. App'x 744, 746-47 (3d Cir. 2017) (not precedential) (internal quotations omitted).

Here, the post-conviction system of relief sets forth the orderly process through which forfeiture may – or may not – be challenged. *Coram nobis* and *audita querela* are not procedural panaceas that allow *Honeycutt* to reach long-resting final orders and judgments by circumventing the established system of relief, and gain relief at any time, for decades on end, that a favorable legal principle is announced.

### 1. Miller's *coram nobis* petition is procedurally defaulted, because he failed to challenge the joint-and-several forfeiture order in his direct appeal.

As an initial matter, the writ of *coram nobis* does not lie where – like here – a defendant is still "in custody." *See United States v. Stoneman*, 870 F.2d 102, 105-06 (3d Cir. 1989). *See also United States v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000) (summarily affirming district court's denial of

*coram nobis* relief where defendant was still in custody).[5] Miller is currently in home confinement at a residential re-entry program with a release date of April 11, 2024. Following his release from the residential re-entry program, Miller will enter his period of supervised release. Not only is Miller currently "in custody" through the Bureau of Prisons, he will continue to be in custody through his five-year period of supervision with the United States Probation Office. *See United States v. Abuhouran*, 508 F. App'x 95, 96 (3d Cir. 2013) (not precedential); *United States v. Baird*, 312 F. App'x 449, 450 (3d Cir. 2008) (not precedential) ("Because Baird was on supervised release at the time he filed his petition, the District Court did not err in dismissing the petition on that ground."); *United States v. Ajao*, 256 F. App'x 526, 527 (3d Cir. 2007) (not precedential); *United States v. Dent*, 135 F. App'x 532, 534 (3d Cir. 2005) (not precedential) (finding *coram nobis* relief not available to defendant on supervised release). *Cf. United States v. Essig*, 10 F.3d 968, 970 n.1 (3d Cir.1993) (observing that supervised release is "custody" for purposes of filing a 2255 motion: "Essig was still subject to a three-year period of supervised release. Therefore, the

---

[5] Indeed, the fact that this Court recently considered and adjudicated Miller's section 2255 petition, which has as a prerequisite that a defendant be in custody, indicates *a priori* that Miller is in custody (and that *coram nobis* cannot lie). *See* 28 U.S.C. § 2255(a).

12

district court had jurisdiction when the [2255] petition was filed because Essig was still 'a prisoner in custody' within the meaning of § 2255.") (*quoting Maleng v. Cook*, 490 U.S. 488, 491 (1989)). Indeed, Miller previously filed a petition for a writ of *coram nobis* in another case, which was construed as a section 2255 motion, because he was in federal custody at the time. *See United States v. Mark Miller*, 830 F. App'x 398, 399 n.2 (3d Cir. 2020) (not precedential).[6] Thus, Miller's request for a writ of *coram nobis* is woefully premature.

Even if the concept of *coram nobis* relief were timely, however, any such relief is procedurally barred here. Miller concedes that "[o]n appeal, [his] attorney did not raise the issue of the criminal forfeiture's validity. (In contrast, co-defendant Crews' attorney raised the issue of the criminal forfeiture arguing it was invalid under the governing statutes." Mot. at ¶ 7.) As the Supreme Court has observed, "[a] collateral challenge may not do service for an appeal." *See United States v. Frady*, 456 U.S. 152, 165 (1982)

---

[6] There is no point in construing Miller's current *coram nobis* petition as a section 2255 petition. Not only would it be barred as successive, this Court has already recognized that section 2255 does not provide a vehicle through which a forfeiture order may be challenged. *See* August 8, 2022 Order at 52 (relying, in part, on *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) ("Our own precedent holds that the monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes." (listing cases)).

13

(holding appellate court erred in applying plain-error standard of review to a Section 2255 petition, in effect giving a defendant two direct appeals). Similarly, "[c]oram nobis is an extraordinary remedy" that may not be used for claims that could have been raised on direct appeal. *See United States v. Albert,* 608 F. App'x 54, 55 (3d Cir. 2015) (citing *United States v. Osser,* 864 F.2d 1056, 1059–62 (3d Cir. 1988)); *see also United States v. Helmos Food Product, Inc.,* 407 F.3d 848, 849 (7th Cir. 2005). Because Miller had every opportunity to challenge all aspects of his forfeiture order on appeal, but elected not to do so, his request for *coram nobis* relief is procedurally defaulted.

When an order of forfeiture is part of the judgment of sentence, as here, the order may only be challenged through a direct appeal filed within 14 days after the entry of the judgment or order. *See* Fed. R. App. P. 4(b); *United States v. Noyes*, 557 F. App'x 125, 127 (3d Cir. 2014) (not precedential) ("'[A] criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all.'") (quoting *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007)); *Georgiou*, 800 F. App'x at 139 (observing that forfeiture must be challenged on direct appeal or not at all) (quoting *Young v. United States*). As Miller concedes, he failed to

appeal the relevant aspect of his forfeiture judgment, and the time to file an appeal passed nearly a decade ago. Thus, *coram nobis* relief is barred.[7]

Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised in a *habeas* petition [or when seeking *coram nobis* relief] only if he can first demonstrate either cause and actual prejudice or that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Here, Miller does not allege actual innocence. (Indeed, he does not even allege that he did not receive $5 million through his many years of cocaine sales.)

Similarly, he does not explicitly set forth any cause and prejudice argument. At most, Miller implies that challenging forfeiture on direct appeal would have been futile, in that he claims that *Honeycutt* "directly overrule[d]" the Third Circuit's prior precedent regarding joint-and-several money judgments, namely, *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999). Mot. at ¶ 15. Miller's suggestion that it would have been pointless to raise this type of forfeiture challenge in his direct appeal, given Third

---

[7] As the Third Circuit has observed, "In a *coram nobis* case, . . . where sentence has been served and nothing remains but some financial detriment, judicial incentive to excuse compliance with procedural prerequisites is of a lower order." *United States v. Osser*, 864 F.2d 1056, 1060 (3d Cir. 1988).

Circuit precedent at the time, does not salvage his current *coram nobis* challenge.

Despite contrary precedent, Miller did have the ability and opportunity to challenge his 2013 forfeiture money judgment[8] in the same manner as the defendants who did so in *United States v. Cano-Flores*, 796 F.3d 83, 95 (D.C. Cir. 2015), and *Honeycutt*.[9] Those defendants claimed that their forfeiture judgments were invalid because they included amounts they did not obtain. Indeed, Miller's codefendant Jaquel Crews attempted to challenge the joint-and-several nature of his forfeiture judgment in his direct appeal. Miller, however, waived any joint-and-several forfeiture challenge in the direct appeal of his conviction. Miller cannot rescue his waiver by implying that he would have lost.

The Supreme Court has rejected futility as cause for failing to appeal, in the context of evaluating whether issues have been preserved for

---

[8] The forfeiture order was entered in 2012, but it became final at the time of his sentencing on July 24, 2013.

[9] In *Cano-Flores*, the Court of Appeals held that a $15 billion dollar forfeiture against a defendant who was a member of a drug cartel and convicted of conspiring to manufacture and distribute cocaine and marijuana within the United States, which was based on calculation of gross cartel proceeds that were foreseeable to the defendant, was erroneous because the forfeiture included amounts not obtained by the defendant. 796 F.3d at 95.

collateral review, of which both *coram nobis* and *audita querela* are sub-

species. Where a defendant has procedurally defaulted a claim by failing to

raise it on direct review, the claim may be subsequently raised in a habeas

petition only if the defendant can first demonstrate "cause" and actual

"prejudice."[10] *See Boulsey v. United States*, 523 U.S. at 622, *citing Murray*

*v. Carrier,* 477 U.S. 478, 485 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87,

(1977).[11]

In *Bousley*, the Supreme Court rejected the same type of "futility"

argument that Miller obliquely suggests may have existed. In that case, the

petitioner contended that his default should be excused because, "before

*Bailey,* any attempt to attack [his] guilty plea would have been futile."

*Bousley*, 523 U.S. at 623. Finding the excuse "unavailing," the Supreme

Court stated that "futility cannot constitute cause if it means simply that a

---

[10] The other factor that can excuse procedural default (actual innocence) is not relevant here.

[11] "While most of the cases addressing procedural default are habeas cases, the logic of the procedural default rule applies with even greater force in the context of *coram nobis*, because *coram nobis* is a more limited remedy." *United States v. Lynch*, 807 F. Supp. 2d 224, 230 (E.D. Pa. 2011). *See also United States v. Frady*, 456 U.S. 152, 182 n.5 (1982) (observing that habeas was intended to be much broader than the ancient writ of coram nobis) (Brennan, J., dissenting); *United States v. Albert*, 608 F. App'x 54, 55 (3d Cir. 2015) (not precedential) (holding that the extraordinary remedy of *coram nobis* may not be used for claims that could have been raised on direct appeal).

claim was 'unacceptable to that particular court at that particular time.'" *Id.* at 623, *citing Engle v. Isaac*, 456 U.S. 107, 130, n.35 (1982). Miller's suggestion of futility is similarly unavailing here, as he could have raised that challenge to his forfeiture judgment on appeal, and pressed that appeal to the Supreme Court, as Honeycutt did, but he chose not to do so. Futility does not enhance his *coram nobis* request.[12] The *coram nobis* claim is procedurally defaulted, even if one could be presented.

### 2. Miller's *audita querela* petition fails, because there is no gap in the post-conviction system of relief.

"*Audita querela* is not a wand which may be waved over an otherwise valid criminal conviction, causing its disappearance[.]" *United States v. Johnson*, 962 F. 2d 579, 582 (7th Cir. 1992). Cases addressing *audita*

---

[12] Any attempt to rely on the "intervening change of law doctrine" based on *United States v. Chittenden*, 896 F.3d 633 (4th Cir. 2018), would be equally unavailing because Miller's forfeiture order was final long before *Honeycutt* was decided. That doctrine serves as an exception to the "law of the case" doctrine. In *Chittenden*, the defendant's petition for certiorari was pending when the Supreme Court decided *Honeycutt*. The Court then granted Chittenden's writ of certiorari, vacated the original judgment, and remanded the case to the Fourth Circuit for further consideration in light of *Honeycutt*. *Id.* at 637. On remand, the government argued that the defendant waived the joint-and-several-liability issue because she conceded that issue in the district court. *Id.* at 639. Relying on the intervening-change-of-law exception to appellate waiver rules, the Fourth Circuit held that Chittenden had not waived the issue. *Id.* at 640. Unlike Miller, Chittenden's direct appeals were not yet exhausted when *Honeycutt* was decided. Thus, the law-of-the-case and intervening-change-of-law doctrines could apply.

*querela* hold that the writ should be issued only where: (1) there has been

an intervening change of law that renders a conviction unjust, and (2) there

is no other avenue of relief available to fill the gap created by the

intervening change of law. *See, e.g., Muirhead v. Attorney Gen.*, 262 F.

App'x 473, 474 (3d Cir. 2008) (not precedential)*; United States v. Hannah*,

174 F. App'x 671, 673 (3d Cir. 2006) (not precedential). In addition, the writ

is an "extraordinary remedy," and it should be issued only in compelling

circumstances where serious constitutional questions exist about the laws

limiting avenues for collateral relief.[13]

Accordingly, *audita querela* can only be considered where there is a

gap in the system of post-conviction relief. The gap must be systemic, not

merely reflect a particular defendant's inability to use available remedies.

*See United States v. Hannah*, 174 F. App'x 671 (3d Cir. 2006) (not

precedential) ("It is the inefficacy of the remedy, not the personal inability

to use it" that determines whether a gap exists). *See also Massey v. United

States*, 581 F.3d 172, 174 (3d Cir. 2009) (finding no gap to fill). Those gaps,

---

[13] *See United States v. Thody*, 460 F. App'x 776, 778 (10th Cir. 2012)
(unpublished), citing *United States v. Denedo*, 556 U.S. 904, 917 (2009).
*See also United States v. Quintieri*, 547 F. App'x 32, 33 (2d Cir. 2013)
(unpublished) ("Writ of *audita querela* is an extraordinary remedy and is
generally available only if the absence of any avenue of collateral attack
would raise serious constitutional questions about the laws limiting those
avenues") (citation omitted).

if any, are exceedingly rare. Significantly, the Third Circuit has observed that it "ha[s] yet to find a gap in the federal post-conviction framework that needed to be filled with a writ of *audita querela." United States v. Potts*, 765 F. App'x 638, 640 (3d Cir. 2019) (not precedential) (*per curiam*).

Here, for several reasons, there is neither a gap to fill nor an injustice for *audita querela* to address. Accordingly, applying *Honeycutt* to Miller's final forfeiture orders would be a significant mistake of law that undermines the principle of finality that must govern post-conviction litigation. *See Teague v. Lane*, 489 U.S. 288, 309 (1989) ("Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect."). Miller's motion thus fails.

The Third Circuit has recognized that where, as here, a sentence can be challenged by direct appeal, there is no gap in the system of post-conviction relief and *audita querela* does not lie. *United States v. Correa*, 500 F. App'x 128, 130 (3d Cir. 2012) (not precedential) (where defendant raises challenges to his sentence "of the type that can be raised on direct appeal" there are "no gaps" in the system of post-conviction relief and *audita querela* relief is barred).

In our system, a criminal defendant has a right of direct appeal. If a defendant wishes to challenge a forfeiture order, he must file an appeal within 14 days of entry of the order. Fed. R. App. P. 4(b). Indeed, forfeiture may only be challenged on direct appeal. *See United States v. Noyes*, 557 F. App'x 125, 127 (3d Cir. 2014) (not precedential) (motion challenging forfeiture order, cloaked as a Rule 41(g) motion, was untimely because challenge was not raised on direct appeal); *see also United States v. Bagiyev*, 359 F. Supp. 3d 435, 438 (E.D. Va. 2019) (*citing United States v. Filice*, 2018 WL 2326616, at \*2 (E.D. Ky. 2018)); *United States v. Alquza*, 2017 WL 4451146, at \*2 (E.D.N.C. Sept. 21, 2017), *aff'd per curiam*, 722 F. App'x 348 (4th Cir. 2018) (unpublished).

As discussed earlier, Miller concedes that he did not "raise the issue of the criminal forfeiture's validity" in his direct appeal. Mot. at ¶ 7.[14] Because Miller had every opportunity to challenge all aspects of his forfeiture order on appeal, but elected not to do so, he is not entitled to

---

[14] While defendant Jaquel Crews raised several challenges to the forfeiture money judgment, defendant Miller raised only one issue, namely, whether this Court should have made a foreseeability determination before imposing the forfeiture order. *See United States v. Miller*, 645 F. App'x 211, 227 (3d Cir. 2016). Having failed to preserve the issue by lodging an objection during his sentencing hearing, the issue was evaluated under the plain error standard, and the Third Circuit determined there was no error. *Id.* at 227-28.

21

*audita querela* relief to challenge his forfeiture order. *See Georgiou,* 800 F. App'x at 138-39; *Potts,* 765 F. App'x at 640. In that sense, there is no gap in the post-conviction system for *audita querela* to fill. *See Georgiou,* 800 F. App'x at 139 ("*audita querela* is not a vehicle by which [the defendant] can appeal the forfeiture . . . order"); *see also Potts,* 765 F. App'x at 640.

Miller does not attempt to justify his failure to challenge the joint-and-several nature of his forfeiture money judgment on appeal. Instead, Miller suggests – without any supporting case law – that subsequently raising a *Honeycutt* challenge in his 2255 petition means that he "has not waived the issue." Mot. at ¶ 18(b). Contrary to Miller's assertion, one does not preserve the ability to challenge a final order for years on end. As Miller concedes, "failure to raise an issue when it first arose may bar a later invocation of *coram nobis*." Mot. at ¶ 18(b) (citing *United States v. Osser*, 864 F.2d 1056 (3d Cir. 1988)). Similarly, a change in the law does not create a gap in the law for *audita querela* to fill. *See United States v. Hannah*, 174 F. App'x 671, 673 (3d Cir. 2006) (not precedential) ("The fact that *Booker* cannot be applied retroactively in [defendant's] case does not create such a gap. . . [i]t is the inefficacy of the remedy, *not the personal inability to use it*, that is determinative.'"), quoting *Cradle v. United States*

*ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002) (emphasis added)).[15] Miller

had the opportunity to challenge forfeiture on appeal. He could have

challenged the nature of his forfeiture liability as joint and several, but he

failed to do so. He did not even object to the forfeiture order at

sentencing.[16] Miller's inability to request relief specifically citing *Honeycutt*

at the time of his direct appeal does not entitle him to the extraordinary

remedy offered by *coram nobis* or *audita querela.*

 As noted above, there is a profound interest in finality in criminal

proceedings.[17] As a result, collateral relief is viewed as extraordinary, and

---

[15] In *Hannah*, the *Booker* decision was issued several years after the defendant already sought (and had been denied) relief under 28 U.S.C. § 2255. Accordingly, there was no procedural vehicle available through which the defendant could seek the benefit of retroactive *Booker* application. Moreover, the Third Circuit had held that *Booker* was not retroactively applicable to cases on collateral review. (This decision also issued several years after the defendant had already sought Section 2255 relief.) Even though the *Hannah* defendant was "[a]pparently aware of these holdings," he sought to raise a *Booker* challenge through the writ of *audita querela*. While the Court held that the defendant could have raised his sentencing objections through a Section 2255 motion, the right was temporally theoretical, as *Booker* was issued six years after the defendant filed his motion to vacate. Simply put, the defendant in *Hannah* could not use *audita querela* to rescue him from the timing of these events in his case.

[16] *See Unites States v. Miller*, 645 F. App'x 211, 227 (3d Cir. 2016) (not precedential) (applying plain error review to foreseeability challenge on forfeiture order, because Miller did not object to forfeiture at sentencing).

[17] "One of the law's very objects is the finality of its judgment. Neither innocence nor just punishment can be vindicated until the final judgment is
*continued . . .*

23

---

known. Without finality, the criminal law is deprived of much of its deterrent effect." *McClesky v. Zant*, 499 U.S. 467, 489 (1991), *quoting Teague v. Lane*, 489 U.S. 288, 309 (1989). Justice Harlan eloquently stated:

> It is, I believe, a matter of fundamental import that there be a visible end to the litigable aspect of the criminal process. Finality in the criminal law is an end which must always be kept in plain view . . . . At some point, the criminal process, if it is to function at all, must turn its attention from whether a man ought properly to be incarcerated to how he is to be treated once convicted. If law, criminal or otherwise, is worth having and enforcing, it must at some time provide a definitive answer to the question litigants present or else it never provides an answer at all. Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional restraints. But this does not mean that in so doing, we should always be halting or tentative. No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.

> A rule of law that fails to take account of these finality interests would do more than subvert the criminal process itself. It would also seriously distort the very limited resources society has allocated to the criminal process. While men languish in jail, not uncommonly for over a year, awaiting a first trial on their guilt or innocence, it is not easy to justify expending substantial quantities of the time and energies of judges, prosecutors, and defense lawyers litigating the validity under present law of criminal convictions that were perfectly free from error when made final. This drain on society's resources is compounded by the fact that issuance of the habeas writ compels a State that wishes to continue enforcing its laws against the successful petitioner to relitigate facts buried in the remote past through presentation of witnesses whose memories of the relevant events often have dimmed. This very act of trying stale facts may well, ironically, produce a second trial no more reliable as a matter of getting at the truth than the first.

*continued . . .*

Congress has placed sharp limits on collateral remedies.[18] Congress passed

28 U.S.C. § 2255 to govern collateral challenges to convictions and

sentences, and that statute by its terms is limited to a challenge to "custody"

based "upon the ground that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without

jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to collateral

attack." 28 U.S.C. § 2255(a). This statute may not be employed to challenge

the monetary portion of a sentence, such as forfeiture or restitution, given

---

*Mackey v. United States*, 401 U.S. 667, 690-01 (1971) (Harlan, J., concurring) (citations omitted).

[18] As the Supreme Court has observed:

It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal . . . If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed . . . . If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by *habeas corpus*, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.

*Sunal v. Large*, 332 U.S. 174, 182 (1947).

that those matters do not involve "custody." *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015). Congress thus provided a habeas remedy only for objections to custody, leaving the appellate remedy as the permissible and exclusive vehicle for challenges to forfeiture.

And even challenges to custody itself are strictly limited, in light of the extraordinary nature of the habeas remedy. Under Section 2255, the prisoner has one year to present a petition, and generally may only petition once. A second petition is allowed only in circumstances so narrow as to be almost nonexistent: where the prisoner presents newly available evidence of actual innocence, or where the Supreme Court itself states a new rule of constitutional law and applies it retroactively to cases on collateral review. 28 U.S.C. § 2255(h). This Court has recognized only one other basis for collateral relief after the presentation of the single petition allowed by statute during the first year, holding that an inmate may seek relief under 28 U.S.C. § 2241 when a court declares a new interpretation of a criminal statute that reveals that the person did not engage in criminal conduct at all. *In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997); *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 179-80 (3d Cir. 2017).[19]

---

[19] The existence of even that remedy under current law has divided appellate courts, and the Supreme Court is presently considering the issue, in *Jones v. Hendrix*, No. 21-857.

In short, Congress has provided a right of appeal with regard to all errors in a criminal proceeding, but limited later extraordinary remedies only to claims seeking liberty. This does not create a "gap"; it simply creates a system in which post-conviction challenges to monetary penalties are permitted on direct appeal. If this were a "gap," such that a defendant could challenge a monetary penalty at any time in perpetuity under *"coram nobis,"* *"audita querela,"* or some other collateral vehicle whenever a new favorable decision is announced, it would then be passing strange that the right to collateral relief from a criminal monetary judgment greatly exceeds that available to challenges to custody. Miller's position is clearly without merit.

Even the significant limits placed on challenges to custody do not create a "gap" allowing *audita querela* relief. In the ordinary case, a petitioner's inability "to meet the stringent gatekeeping requirements of the amended § 2255" does not allow any further remedy, as "[s]uch a holding would effectively eviscerate Congress's intent in amending § 2255." *In re Dorsainvil,* 119 F.3d 245, 251 (3d Cir. 1997). The same is certainly true with regard to the limits on post-conviction challenges to monetary penalties. A "prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the post-

27

conviction remedies that must be filled by the common law writs." *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1080 (9th Cir. 2001). Where Congress has acted to restrict collateral remedies, "it would be senseless to suppose that Congress permitted them to pass through the closed door [by way of the All Writs Act] simply by changing the number 2241 to 1651 on their motions." *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998).

In sum, Miller's legal theory is entirely wrong. He essentially argues that any time there is a new judicial decision or other change in law that concerns forfeiture, a court has authority – even decades later – to revisit a final judgment. That is obviously incorrect.[20] It is incorrect even with regard to challenges to custody, and certainly a defendant has no greater and indefinite right to challenge forfeiture. Accordingly, the *audita querela* relief that Miller seeks does not exist because there are no procedural

---

[20] As the Supreme Court has said:

> Once [a] defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect.

*United States v. Frady*, 456 U.S. 152, 164-65 (1982).

gaps.[21] *See Georgiou,* 800 F. App'x at 139 (Court held that *audita querela* is not a vehicle to attack forfeiture order post-conviction under *Honeycutt*, because defendant failed to challenge forfeiture order on direct appeal and "to identify a gap in the post-conviction relief system"); *Potts,* 765 F. App'x at 640 (Third Circuit "ha[s] yet to find a gap in the federal post-conviction framework that needed to be filled with a writ of *audita querela*, and Court rejects *audita querela*  writ challenging forfeiture order under *Honeycutt*").

### C.    There Is No Error Here for *Coram Nobis* or *Audita Querela* To Address Because Miller Does Not Benefit from *Honeycutt*.

While this Court previously granted co-defendant Crews' motion to vacate his original forfeiture money judgment order, the Court then reimposed a new forfeiture money judgment order in the same amount, based on the same underlying trial evidence that had supported the original order. (ECF 658, 659). Simply put, *Honeycutt* did not in fact change the extent of Crews' forfeiture liability.

---

[21] If the government were currently seeking to forfeit either newly discovered directly forfeitable and/or substitute assets in a new motion under Federal Rule of Criminal Procedure 32.2(e) and/or 21 U.S.C. § 853(p), there would be a vehicle through which *Honeycutt* could apply. This is yet another reason why there is no gap in the postconviction system, particularly as it relates to the enforcement of a forfeiture money judgment.

Like his co-defendant Crews, Miller received substantial proceeds as a key participant and dealer in the Frankford Drug Trafficking Organization ("DTO"), and he also used substantial funds to facilitate purchasing cocaine for resale. Thus, even if he were being sentenced today, *Honeycutt* also would not change the extent of his forfeiture liability. Accordingly, even if the vehicles of *coram nobis* or *audita querela* were available (which they are not), Miller would not be entitled to relief. A close read of Miller's motion shows that he makes no effort to rebut the record evidence, which showed that he received and/or used to facilitate over $5,000,000 from his multi-year role in the DTO.  Instead, he merely states that the forfeiture in his case "is unlawful" in light of *Honeycutt*. Mot. at ¶ 17.

The record, however, shows that Miller received and/or used to facilitate drug purchases of at least $5,000,000 – and indeed millions more.[22] While co-defendant Jaquel Crews received a four-point leadership

---

[22] While this Court has reimposed a $5,000,000 forfeiture money judgment against codefendant Jaquel Crews, the forfeiture money judgment against defendant Miller does not represent double-counting. To the extent that the government has or will forfeit assets in satisfaction of either money judgment, defendant Crews and Miller would receive an offset for amounts forfeited by the other. The *Honeycutt* decision recognizes that two defendants may earn the same proceeds. *See Honeycutt*, 137 S. Ct. at 1631-32 (discussing a hypothetical where farmer-drug dealer obtains $3,000,000 in proceeds while employee-student obtains the $3,600 he is paid, which results in a total forfeiture amount of $3,003,600).  The government, however, may not collect more than 100% of the criminal
*continued . . .*

enhancement for his role in the DTO, Crews' leadership does not imply that Miller was an incidental figure who did not realize substantial gain from years of narcotics trafficking.

Unlike in *Honeycutt*, the government here is not seeking forfeiture of proceeds under a *Pinkerton* liability theory for property that Miller never received or never used to facilitate cocaine purchases. As the Third Circuit has recently recognized, "[E]ven after Honeycutt, multiple people can 'obtain' the same proceeds over the course of a crime where they jointly controlled the enterprise." *See United States v. Scarfo*, 41 F.4th 136, 218 (3d Cir. 2022) (citation omitted). The Third Circuit further observed that "The Supreme Court in *Honeycutt* emphasized the importance of having an 'ownership interest' in or 'personal benefit' from the proceeds of a crime." *Id.* at 218 (citing *Honeycutt*). *See also, e.g.*, *United States v. Tanner*, 942 F.3d 60, 67-68 (2d Cir. 2019) (holding that *Honeycutt* barred joint and several liability where a defendant never acquired proceeds as a result of the crime, but when each co-conspirator acquired full proceeds, coextensive

---

property generated by an offense.  *See, e.g., United States v. McKay,* 506 F. Supp. 2d 1206, 1214 (S.D. Fla. 2007) (providing "set-off" against RICO forfeiture to reflect amounts forfeited for mail fraud and embezzlement counts, explaining that "[a]lthough the Government is entitled to forfeiture of these amounts, it is not entitled to double count the proceeds for purposes of recovery"), *aff'd,* 285 F. App'x 637 (11th Cir. 2008) (per curiam).

31

forfeiture liability would lie); *United States v. Bangiyev*, 359 F. Supp. 3d 435, 440 (E.D. Va. 2019), *aff'd*, 771 F. App'x 328 (4th Cir. 2019) (unpublished) (finding *Honeycutt* does not apply to two co-defendants who were at center of large, sophisticated conspiracy, rather than incidental figures). *Cf. S.E.C. v. Metter*, 706 F. App'x 699, 702 n.2 (2d Cir. 2017) (unpublished) (declining to apply *Honeycutt* to defendant who controlled enterprise at issue in part because *Honeycutt* only "protects incidental figures from forfeiture of amounts far beyond what would be justified by their role in the offense.").

Thus, even if Miller's *coram nobis/audita querela* petition were procedurally appropriate, or if this case presented a gap to be filled, his request still fails because his forfeiture order contains no error. *See United States v. Bullock*, 666 F. App'x 117 (3d Cir. 2016) (not precedential) (where an intervening change in law is irrelevant to defendant, *audita querela* relief does not lie). Here, Miller played a substantial role in the decades-

long Frankford DTO enterprise,[23] and he enjoyed the fruits of his efforts.[24]
As this Court has previously found, the trial record demonstrates that the
total quantity of cocaine for which Miller was responsible (selling and/or
purchasing), either himself or by pooling resources with Crews, totaled
531.14 kilograms. *See* July 24, 2012 Sentencing Tr. 30:15-31:7. In the
government's briefing wherein it sought to reimpose a $5,000,000
forfeiture money judgment against Jaquel Crews after the original 2012
forfeiture order was vacated, the lowest per-kilogram purchase price for
cocaine was $18,000, with some prices being higher. (ECF 643). If one

---

[23] As this Court observed in characterizing the size, scope, and effects
of the Frankford Drug Trafficking Organization:

In terms of the nature and circumstances, the criminal conspiracy of
which this Defendant was convicted is egregious. It rates pretty close
to the top in terms of duration, in terms of amount of distribution in
[the Frankford] area. And it is not hard for one to infer from all these
circumstances that the nature and circumstances of this criminal
activity played a significant part in the destruction of what once was a
wonderful community in Frankford, and infected – not only affected,
but infected many of the citizens' children that lived in this area, went
to school in this area, shopped in this area, looked for happiness in
this area.

July 24, 2013 Tr. 41:15-42:1.

[24] As this Court observed at Miller's sentencing hearing, "One would
say that thereafter, with the kind of money that [Miller] was handling and
the kind of lifestyle that he had, he could afford or do just about anything
he wanted to do[.]" July 24, 2013 Tr. 43:13-16.

33

conservatively uses $18,000 across 531.14 kilograms of cocaine attributed to Miller, the total is $9,560,520, which is well below the approximately $16,544,160.99 that the government re-established for Crews, and which is commensurate with Miller's purportedly "non-leadership" role in the two-decade-long drug trafficking organization.[25]

Simply put, Miller's forfeiture liability was not based on mere low-level participation as a street seller in a drug gang. The forfeiture judgment represents the proceeds that Miller actually acquired or used to facilitate cocaine purchases – through his extensive involvement in the Frankford DTO – the offenses for which he was convicted. Accordingly, his forfeiture judgment raises no *Honeycutt* concerns. *See Potts*, 765 F. App'x 638 (holding even if *Honeycutt* is retroactive, and even if *audita querela* is available, no extraordinary basis for relief because defendant personally received sum to be forfeited through his command of particular drug corner).

---

[25] Proving the extent of Miller's forfeiture liability is premature at this point, as the government is not currently seeking to forfeit any assets in partial satisfaction of the forfeiture money judgment. If the government were seeking to forfeit assets pursuant to 21 U.S.C. § 853(p) and Federal Rule of Criminal Procedure 32.2(e)(1)(B), then the government would need to show that it is not seeking to forfeit assets that exceed the value of Miller's forfeiture liability. As shown above, however, the extent of Miller's forfeiture liability well exceeds the $5,000,000 money judgment that was entered against him at sentencing.

In sum, Miller's forfeiture money judgment reflects no error and is not unjust. It reflects forfeiture liability that mirrors his involvement in the offenses for which he was convicted and with the criminal proceeds/facilitating property that Miller received/used throughout the life of the Frankford DTO. Thus, there is no error for *coram nobis* or *audita querela* to correct and no basis for relief under *Honeycutt*.

## CONCLUSION

For the reasons stated above, the government respectfully requests

that Miller's motion for a writ of *coram nobis* and/or *audita querela* be

denied.[26]

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery and Financial Litigation

*/s  Elizabeth M. Ray*
ELIZABETH M. RAY
K.T. NEWTON
Assistant United States Attorneys

---

[26] Defendant Miller's *coram nobis/audita querela* motion is a collateral attack on an element of his criminal sentence, but a certificate of appealability is not necessary. By the terms of 28 U.S.C. § 2253(c)(1)(B), a certificate of appealability is only necessary for appeals from orders denying § 2255 motions. *See United States v. Baptiste*, 223 F.3d 188, 189 n.1 (3d Cir. 2000).

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Carina Laguzzi, Esq.

*/s  Elizabeth M. Ray*
ELIZABETH M. RAY
Assistant United States Attorney

DATED:  September 26, 2022.